1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                                   NORTHERN DISTRICT OF CALIFORNIA

10                                        San Francisco Division

11    STEVE TEMMING,                              Case No. 21-cv-04858-LB

12                      Plaintiff,

13           v.                                   **ORDER ON DEFENDANTS' MOTION
                                                  TO DISMISS**
14    SUMMUS HOLDINGS, LLC, et al.,
                                                  Re: ECF No. 21
15                      Defendants.

16

17                                         **INTRODUCTION**

18          The plaintiff alleges that he leased a counterfeit medical laser at a veterinary trade show in San

19    Francisco and sued the supplier, defendants Summus Holdings, LLC (formerly K-Global LLC),

20    Summus Medical Laser, LLC (formerly K-Laser USA), and their director and president, Dr. Richard

21    Albright — all domiciled in Tennessee — for fraud and false advertising under the federal civil

22    RICO statute and California law.[1] The defendants moved to dismiss the case under Federal Rule of

23    Civil Procedure 12(b)(2) for lack of personal jurisdiction over Summus Holdings and Dr. Albright

24    and for failure to state a claim under Rule 12(b)(6). They also moved to transfer the case to the

25

26

27    _____
      [1] First Am. Compl. (FAC) – ECF No. 19 at 3–4 (¶¶ 8–11), 6–16 (¶¶ 17–51). Citations refer to material
28    in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top
      of documents.

ORDER – No. 21-cv-04858-LB

*United States District Court*
*Northern District of California*

Middle District of Tennessee under 28 U.S.C. § 1404(a) or to the Commonwealth of Pennsylvania under a forum-selection clause in the plaintiff's equipment-lease agreement with a third party.[2]

The court dismisses the claims against Summus Holdings and Dr. Albright for lack of personal jurisdiction: Summus Medical Laser was the only vendor at the convention. The court dismisses the RICO claim because the plaintiff did not plead either investment injury under 18 U.S.C. § 1962(a) or two predicate RICO acts and dismisses the false-advertising claim under Cal. Bus. & Prof. Code § 17508, which has no private right of action. The court denies the motions to dismiss the common-law fraud claim and transfer the case: the plaintiff pleaded the fraud claim sufficiently, the defendants did not establish their standing under the third-party lease agreement to either the application of Pennsylvania law or a transfer to that forum, and they did not establish — given the transaction in this district and the plaintiff's choice of forum — that transfer to the Middle District of Tennessee is appropriate under § 1404.

## STATEMENT

On December 6, 2018, the plaintiff, a retired veterinarian and a citizen of New Jersey, attended a veterinary convention in San Francisco. There, Scott Allen, a sales representative for the defendants, demonstrated a Class IV medical laser to the plaintiff and told him that the defendants were authorized distributors of the device, which was manufactured in Italy by a company called Eltech K-Laser S.r.l. The display devices had the "K-Laser" mark, which was substantially similar to the mark belonging to Eltech K-Laser, thereby suggesting that they were genuine products manufactured by Eltech. Mr. Allen "sold [a device with the K-Laser mark] to Plaintiff at the convention." The product was a "Platinum 4, 24W CW, 28W ISP Laser."[3] The plaintiff then was directed to the Beneficial Equipment Finance personnel, who were present at the San Francisco convention, to finance his lease, which he did by signing a 60-month Equipment Lease Agreement. The lease is between Beneficial and the plaintiff, it lists the supplier as K-Laser USA LLC, and it

---

[2] Mot. – ECF No. 21 at 1–2.

[3] FAC – ECF No. 19 at 2 (¶ 3), 4 (¶ 11), 14 (¶ 42); Prod. Info., Ex. 1 – ECF No. 19-1; Prod., Exs. 2–3 – ECF Nos. 19-2–19-3.

United States District Court
Northern District of California

has a choice-of-law and choice-of-forum provision of the Commonwealth of Pennsylvania.[4] On December 12, 2018, Mr. Allen emailed the plaintiff (from a k-laser.com email address) about completing a form to register the device.[5]

On April 21, 2021, the plaintiff learned that the product was not manufactured by Eltech K-Laser S.r.l. and demanded a refund. The defendants refused.[6] In fact, Eltech K-Laser S.r.l. had terminated its distribution agreement with the defendants in February 2018 (before the December 2018 sale here) when it discovered that K-Laser USA was putting the K-Laser mark on products that Eltech K-Laser had not manufactured, "particularly a device called 'Platinum' that the defendants passed off as a new K-Laser S.r.l. device."[7] The defendants were enjoined in June 2019 from using the K-Laser mark.[8] The plaintiff alleges on information and belief that Dr. Albright changed the name of K-Laser USA, LLC to Summus Medical Laser LLC to avoid the injunction.[9]

The defendants provide more jurisdictional facts. The corporate defendants have no offices or employees in California, and their board of directors does not meet in California. Summus Holdings "is not domiciled, licensed, or authorized to do business in California," and it "does not play any role in the activities of Summus [Medical Laser] and does not market, sell, or place any product into the stream of commerce."[10] Summus Medical Laser distributes laser devices in the medical and veterinary fields and maintains a registered agent for service of process in California "for tax purposes." Dr. Albright is domiciled in Tennessee, does not conduct or solicit business in California, and does not own any property in California. He did not attend the veterinary show described in the complaint.[11] Scott Allen "has never been to a veterinary trade show in San Francisco, or even California." The defendants do not dispute that the plaintiff leased a Platinum

---

[4] FAC – ECF No. 19 at 4–5 (¶ 12); Lease, Ex. 4 – ECF No. 19-4 at 2, 4.

[5] Email, Ex. 5 to FAC – ECF No. 19-5.

[6] FAC – ECF No. 19 at 5 (¶ 15).

[7] *Id.* at 4 (¶ 9).

[8] *Id.* (¶ 10); Arb. Award, Ex. 1 to Pl. Req. for Jud. Notice – ECF No. 24-1 at 3.

[9] FAC – ECF No. 19 at 5 (¶ 14).

[10] Albright Decl. – ECF No. 21-1 at 1–2 (¶ 2).

[11] *Id.* at 2 (¶¶ 3–4).

United States District Court
Northern District of California

1    laser from Beneficial, who obtained it from Summus Medical Laser. "To the best of [Dr.

2    Albright's] knowledge, Plaintiff has never purchased anything from Defendants."[12]

3        The plaintiff sued the defendants for (1) violating the Racketeer Influenced and Corrupt

4    Organizations Act (RICO), 18 U.S.C. § 1962(a) and (d), (2) false advertising in violation of Cal.

5    Bus. & Prof. Code § 17508, and (3) common-law fraud. The civil RICO claim is predicated on

6    five acts: trafficking in counterfeit goods (18 U.S.C. § 2320); mail fraud (18 U.S.C. § 1341); wire

7    fraud (18 U.S.C. § 1343); engaging in interstate travel in furtherance of the racketeering enterprise

8    (18 U.S.C. § 1952); and the unlawful manufacture, sale, or possession for sale of a registered

9    counterfeit mark (California Penal Code § 350).

10       The defendants are (a) Summus Holdings, LLC (formerly K-Global LLC), a Tennessee

11   limited-liability company with its principal place of business in Tennessee, (b) Summus Medical

12   Laser, LLC (formerly K-Laser USA), formerly a Tennessee limited-liability company and now a

13   single-member Tennessee limited-liability company with its principal place of business in

14   Tennessee, and (c) Dr. Albright, a controlling member of the companies, also a resident of

15   Tennessee. The Summus defendants are "qualified to do business" in California through their

16   registrations in corporate filings made on August 8, 2017 (for K-Laser, LLC) and June 8, 2021

17   (for Summus Medical Laser, LLC).[13]

18       The defendants moved to dismiss (1) under Federal Rule of Civil Procedure 12(b)(2) for lack of

19   personal jurisdiction over Summus Holdings and Dr. Albright and (2) under Rule 12(b)(6) for failure

20   to state a claim. Alternatively, they moved to transfer the case to the Middle District of Tennessee

21   under 28 U.S.C. § 1404(a) or to the Commonwealth of Pennsylvania under the lease agreement's

22   forum-selection clause.[14] All parties consented to magistrate-judge jurisdiction.[15] The court held a

23   hearing on October 28, 2021.

24

25

26   [12] *Id.* at 2 (¶¶ 3, 5).

27   [13] FAC – ECF No. 19 at 2–3 (¶¶ 4–7), 6–16 (¶¶ 17–51).

     [14] Mot. – ECF No. 21.

28   [15] Consents – ECF Nos. 12, 16.

United States District Court
Northern District of California

**LEGAL STANDARD**

**1.   Rule 12(b)(2)**

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (cleaned up). The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2001).

"Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (cleaned up). "Uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (cleaned up). But courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit[.]" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up); *accord Ranza*, 793 F.3d at 1068 ("A plaintiff may not simply rest on the bare allegations of the complaint.") (cleaned up).

**2.   Rules 8(a), 12(b)(6), and 9(b)**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level." *Id.* (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from the allegations. *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). The allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000).

Fraud allegations elicit a more demanding standard. Rule 9(b) provides: "In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). "Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) (quotation omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (en banc) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer"); *Postpichal v. Cricket Wireless, LLC*, No. C 19–07270 WHA, 2021 WL 2531172, at *3–4 (N.D. Cal. June 6, 2021) (RICO claims based on predicate acts of fraud are subject to Rule 9(b)) (citing *Odom*, 486 F. 3d at 553).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss, and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

**ANALYSIS**

The defendants moved to dismiss the case against Summus Holdings and Dr. Albright for lack of personal jurisdiction (but do not contest personal jurisdiction for Summus Medical Laser). They also moved to dismiss all claims under Rule 12(b)(6) for failure to state a claim and, alternatively, asked to transfer the case under 28 U.S.C. § 1404(a) to a more convenient venue, the Middle District of Tennessee, where the defendants reside, or the Commonwealth of Pennsylvania under the lease agreement's forum-selection clause. The court grants the motion to dismiss for lack of personal jurisdiction over Summus Holdings and Dr. Albright, grants the motion to dismiss the RICO and false-advertising claim against Summus Medical Laser with leave to amend, denies the motion to dismiss the common-law fraud claim, and denies the motion to transfer.

**1.   Personal Jurisdiction**

There are two types of personal jurisdiction: general and specific. *Bristol–Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017). The plaintiff does not assert general jurisdiction, instead asserts specific jurisdiction, and also contends that the defendants are subject to nationwide service of process under RICO.[16]

**1.1   Specific Personal Jurisdiction**

"In order for a . . . court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol Myers*, 137 S. Ct. at 1780 (cleaned up). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (cleaned up). "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (cleaned up). The Ninth Circuit employs a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which

---

[16] Opp'n – ECF No. 23 at 10–15.

United States District Court
Northern District of California

he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "The plaintiff has the burden of proving the first two prongs." *Id.* "If he does so, the burden shifts to the defendant to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* at 1212 (cleaned up) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

With respect to the first prong, courts generally apply a "purposeful availment" analysis in suits sounding in contract or involving business transactions and a "purposeful direction" analysis (also known as the "effects test") in suits sounding in tort (including claims of fraud). *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *RHUB Commc'ns, Inc. v. Karon*, No. 16-cv-06669-BLF, 2017 WL 3382339, at *5 (N.D. Cal. Aug. 7, 2017). The plaintiff argues only purposeful availment, citing the defendants' registration of their businesses here.[17]

A defendant's purposeful availment of the privilege of doing business in a forum requires "some type of affirmative conduct" that "allows or promotes the transaction of business within the forum state." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988); *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (first prong may be satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof"); *Schwarzenegger*, 374 F.3d at 802 ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."); *Picot*, 780 F.3d at 1212 (contract alone does not automatically establish minimum contacts); *Long v. Authentic Athletix, LLC*, No. 16-cv-03129-JSC, 2016 WL 6024591, at *3 (N.D. Cal. Oct. 14, 2016) (contract is an intermediate step that "connects prior negotiations with future consequences, the real object of a business transaction"). Affirmative

---

[17] FAC – ECF No. 19 at 3 (¶ 7); Opp'n – ECF No. 23 at 13–14.

conduct can include a defendant's attendance and participation at a trade show. *Portrait Displays, Inc. v. Speece*, No. C-04-1501 RMW, 2004 WL 1964506, at *6 (N.D. Cal. Sept. 3, 2004); *Penn Eng'g & Mfg. Corp. v. Shanghai Jingyang Imp. & Exp. Co.*, No. 2:07-cv-01505-PMP (GWF), 2008 WL 11452324, at *14 (D. Nev. Apr. 15, 2008). Summus Medical Laser undisputedly purposefully availed itself of the privilege of doing business in the forum by sending its employees to do business here at the convention. But nothing suggests any purposeful availment by the other defendants. Summus Holdings, which is domiciled in Tennessee, did not attend the conference, send employees here, "has no employees [here,] and has not placed any goods (including lasers) into the stream of commerce." A business registration is not an action attendant to a business transaction that gives rise to purposeful availment. Similarly, Dr. Albright did not purposefully avail himself of the privilege of doing business in the forum: he too is domiciled in Tennessee, does not conduct or solicit business in California, and did not attend the convention.[18]

To the extent that the defendants argue that Mr. Allen never came to San Francisco and the plaintiff did not buy (and only leased) the laser, these facts are irrelevant to the jurisdictional determination because the defendants do not dispute personal jurisdiction over Summus Medical Laser. Also, the complaint describes the transaction as a lease and purchase of the device, and the lease agreement allows the purchase of the laser for $1 at the end of the lease.[19] At least one Summus Medical Laser employee attended the trade show, even if it was not Mr. Allen.

### 1.2   Nationwide Service Under the RICO Statute's "Ends of Justice" Provision

The plaintiff contends nationwide service under the RICO statute is required by "the ends of justice" because no other district has personal jurisdiction because the uncharged co-conspirator Scott Allen is a resident of New Jersey who is not subject to jurisdiction in Tennessee, where the other defendants reside.[20] The "ends of justice" do not require the exercise of jurisdiction over Summus Holdings or Dr. Albright.

---

[18] Mot. – ECF No. 21 at 6–7; Albright Decl. – ECF No. 21-1 at 1–2 (¶¶ 2–4).

[19] Lease, Ex. 4 to FAC – ECF No. 19-4 at 2.

[20] Opp'n – ECF No. 23 at 11.

1    A RICO action generally is filed in the district where a defendant "resides, is found, has an

2  agent, or transacts his affairs." 18 U.S.C. § 1965(a). Nationwide service of process is allowed for

3  RICO defendants who do not satisfy § 1965(a) if "the ends of justice" require it. *Id.* § 1965(b). For

4  nationwide service under § 1965(b), the court must have personal jurisdiction over at least one of

5  the participants in the multidistrict conspiracy, the defendants must have minimum contacts with

6  the United States as a whole, and no other district can have personal jurisdiction over all alleged

7  co-conspirators. *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir.

8  1986). The plaintiff has the burden of establishing that there is no other district that can exercise

9  jurisdiction. *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 18-cv-02539-HSG, 2019 WL 1048252,

10  at *6 (N.D. Cal. Mar. 5, 2019); *Klayman v. Deluca*, No. 5:14-CV-03190-EJD, 2015 WL 427907,

11  at *5 (N.D. Cal. Jan. 30, 2015).

12    Mr. Allen's residence in New Jersey does not compel nationwide service over Summus

13  Holdings and Dr. Albright under the ends-of-justice exception. The Middle District of Tennessee

14  has jurisdiction over all the defendants and is an alternative forum that is available. Also, the text of

15  § 1965(b) allows jurisdiction over non-resident "parties," not co-conspirators. In *Butcher's Union*,

16  the Ninth Circuit referred to co-conspirators, but only in the context of analyzing its jurisdiction

17  over the named defendants. 788 F.2d at 537. The court does not reach the issue on this argument

18  and this record. Also, on this record, the plaintiff has not established that Mr. Allen is not subject to

19  jurisdiction in Tennessee: Mr. Allen worked for a Tennessee employer and, if he attended the

20  convention, did so at that employer's behest. The plaintiff could have asked for jurisdictional

21  discovery and did not.[21] He thus has not met his burden of establishing that there is no other district

22  that could exercise jurisdiction.

23                                    *      *      *

24    The court dismisses the claims against Summus Holdings and Dr. Albright for lack of personal

25  jurisdiction.

26

27

28  ---
[21] Reply – ECF No. 25 at 3–4.

United States District Court
Northern District of California

**2.   Failure to State a Claim**

The defendants moved to dismiss all claims under Rule 12(b)(6): the RICO claim for failing to sufficiently allege both investment injury and the requisite predicate acts; the California claims on the ground that the lease agreement's choice-of-Pennsylvania-law provision forecloses these state law claims; the false-advertising claim because Cal. Bus. & Prof. Code § 17508 does not provide a private cause of action; and the fraud claim because there is no evidence of fraud.[22] The court dismisses the RICO and false-advertising claims and denies the motion to dismiss the common-law fraud claim.

**2.1   RICO Claim**

The plaintiff claims that the defendants branded their lasers with "K-Laser," a mark deceptively similar to a mark belonging to Eltech K-Laser S.r.l., thereby deceiving consumers in violation of 18 U.S.C. § 1962(a) and (d).[23] The defendants moved to dismiss on the ground that the plaintiff did not allege the investment injury required by § 1962(a) and did not sufficiently plead two predicate acts.[24] The court grants the motion on both grounds.

**2.1.1   Investment Injury**

First, the plaintiff did not plead investment injury. Section 1962(a) prohibits a person who receives income derived from a pattern of racketeering activity from using or investing such income in an enterprise engaged in interstate commerce. 18 U.S.C. § 1962(a). A plaintiff claiming a § 1962(a) violation "must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008) (cleaned up). This "investment injury" must be "separate and distinct from the injury flowing from the predicate act." *Id.* "Reinvestment of proceeds from the alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation." *Id.* Thus, the plaintiff must plead more than reinvestment of proceeds

---

[22] Mot. – ECF No. 21.

[23] FAC – ECF No. 19 at 6 (¶ 22); Opp'n – ECF No. 23 at 17–18.

[24] Mot. – ECF No. 21 at 8–12.

1   and must plead that the investment of racketeering income was the proximate cause of the injury.

2   *Id.* Otherwise, almost every racketeering act committed by a corporation would result in a §

3   1962(a) violation because corporations generally reinvest their profits. This would eviscerate the

4   distinction between § 1962(a) and § 1962(c), which prohibits a person employed by an enterprise

5   engaged in interstate commerce from conducting or participating in the conduct of the enterprise

6   through a pattern of racketeering activity. *Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d

7   952, 960–61 (C.D. Cal. 2001).

8        The plaintiff alleged only that the defendants sold counterfeit products deceptively and alleged

9   no facts about investment injury.[25] This does not plausibly plead investment injury. *Id.* The

10   plaintiff nonetheless contends that the complaint alleged reinvestment of the proceeds, thus

11   allowing the enterprise to send sales staff to conventions like the one at issue here, in furtherance

12   of the racketeering enterprise.[26] The complaint does not have allegations about proceeds, and even

13   if it did, reinvestment of proceeds does not establish investment injury. The plaintiff thus does not

14   plausibly plead a § 1962(a) claim. He does not plead a § 1962(d) claim either: that section

15   prohibits a conspiracy claim predicated on the § 1962(a) violation, so the plaintiff's § 1962(d)

16   claim fails for the same reasons as the § 1962(a) claim.

17        **2.1.2    Predicate Acts**

18        Second, the plaintiff did not plead at least two predicate acts sufficiently. 18 U.S.C. § 1961(5).

19        To establish a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3)

20   through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the

21   plaintiff's 'business or property.'" *Grimmet v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996); *see*

22   *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO, 2017 WL 3485881, at *12

23   (N.D. Cal. Aug. 15, 2017) (citing *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

24   990, 997 (9th Cir. 2014)). Summus Medical Laser challenges the sufficiency of the five predicates

25   alleged by the plaintiff: (1) trafficking in counterfeit goods (18 U.S.C. § 2320); (2) mail and wire

26

27   [25] FAC – ECF No. 19 at 6–7 (¶¶ 21–23).

28   [26] Opp'n – ECF No. 23 at 17 (citing FAC – ECF No. 19 at 6–7 (¶¶ 21–23)).

1    fraud (18 U.S.C. §§ 1341 AND 1343); (3) engaging in interstate travel in furtherance of the

2    racketeering enterprise (18 U.S.C. § 1952); and (4) the unlawful manufacture, sale, or possession

3    for sale of a registered counterfeit mark (California Penal Code § 350).

4        First, to state a claim under 18 U.S.C. § 2320, a plaintiff must establish that the defendant (1)

5    trafficked or attempted to traffic in goods or services, (2) intentionally (3) used a counterfeit mark

6    on or in connection with the goods or services, and (4) knew that the mark was counterfeit. *Wang*

7    *v. Rodriguez*, 830 F.3d 958, 964 (9th Cir. 2016); *Arch Ins. Co. v. Allegiant Pro. Bus. Servs., Inc.*,

8    No. 11-cv-1675-CAS PJWX, 2012 WL 1400302, at *5 (C.D. Cal. Apr. 23, 2012) (applying the

9    same elements to a RICO claim based on a § 2320 violation). A counterfeit mark is defined as:

10           (A) a spurious mark—

11                (i) that is used in connection with trafficking in any goods, services, labels,
                 patches, stickers, wrappers, badges, emblems, medallions, charms, boxes,
12               containers, cans, cases, hangtags, documentation, or packaging of any type or
                 nature;

13               (ii) that is identical with, or substantially indistinguishable from, a mark
14               registered on the principal register in the United States Patent and Trademark
                 Office and in use, whether or not the defendant knew such mark was so
15               registered;

16               (iii) that is applied to or used in connection with the goods or services for which
                 the mark is registered with the United States Patent and Trademark Office, or is
17               applied to or consists of a label, patch, sticker, wrapper, badge, emblem,
                 medallion, charm, box, container, can, case, hangtag, documentation, or
18               packaging of any type or nature that is designed, marketed, or otherwise
                 intended to be used on or in connection with the goods or services for which the
19               mark is registered in the United States Patent and Trademark Office; and

20               (iv) the use of which is likely to cause confusion, to cause mistake, or to
21               deceive.

22   18 U.S.C. § 2320(f)(1)(A).

23       The defendants contend that their K-Laser mark could not be the requisite "counterfeit mark"

24   because the complaint does not allege that Eltech owned a mark that was identical with, or

25   substantially indistinguishable from, their own mark at the time of the sale.[27] *See* 18 U.S.C. §

26   2320(f)(1)(A)(ii). The plaintiff counters that Dr. Albright "misappropriated [the marks] from

27

28   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [27] Mot. – ECF No. 21 at 9–10; Albright Decl. – ECF No. 21-1 at 2–3 (¶ 6).

United States District Court
Northern District of California

Eltech without their knowledge or consent, and with the intent of using them to manufacture counterfeit lasers and sell them with the Eltech marks."[28] He adds that the marks were held in a "constructive trust," and thus Dr. Albright "never acquired ownership of the subject trademarks."[29] But this does not plead the requisite element that Eltech owned the registered mark at any point when the defendants used the mark. 18 U.S.C. § 2320(f)(1)(A)(ii).

Second, the defendants argue that both the mail fraud and wire fraud predicate acts fail because the complaint does not allege specific intent to defraud. *Sanville v. Bank of Am. Nat'l Tr. & Sav. Ass'n.*, 18 F. App'x. 500, 501 (9th Cir. 2001) (specific intent to deceive or defraud must be pleaded with particularity to state a claim for both mail and wire fraud). The specific intent necessary for mail and wire fraud must be apparent in the alleged scheme itself. *Id.* Here, the complaint does not allege a specific intent to defraud the plaintiff. It alleges only that the defendants "assigned the sale" to Beneficial Equipment Finance Corp., and that Scott Allen emailed the plaintiff "in furtherance of the scheme."[30] This conclusion does not plead facts about specific intent to defraud.

The plaintiff argues that a RICO plaintiff is not required to make such a showing at the pleading stage because facts supporting a defendant's mental state are not available. *Neubronner v. Millken*, 6 F.3d 666, 672 (9th Cir. 1993) (Rule 9(b) may be relaxed with respect to matters "within the opposing party's knowledge"). But the plaintiff did not cite any case where even the relaxed standard was met and the motion to dismiss was denied. *Id.* (dismissing for alleging "no more than suspicious circumstances" instead of "a sufficient factual basis" to infer the necessary mental state) (cleaned up). The plaintiff's citation to *Miller* is vague and not helpful. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) (affirming dismissal of a fraud claim because the plaintiff failed to allege enough facts to meet the lower standard applied to fraud committed by a defendant with special expertise). Thus, the plaintiff fails to plead wire fraud or mail fraud as predicate acts.

---

[28] Opp'n – ECF No. 23 at 18.

[29] *Id.* at 19.

[30] Compl. – ECF. No. 19 at 10 (¶ 31).

1    Third, the plaintiff did not contest the defendants' argument that the claim for unlawful

2    interstate travel fails to allege any unlawful activity.[31]

3    Lastly, the defendants argue the plaintiff failed to allege a violation of California Penal Code §

4    350(a) (prohibiting the manufacture, sale, or possession of any counterfeit mark registered with

5    the California Secretary of State or registered on the Principal Register of the U.S. Patent and

6    Trademark Office). The plaintiff offers no precedent or support for his assertion that § 350 is the

7    state-law corollary to 18 U.S.C. § 2320.[32] Additionally, the state statute defines a "counterfeit

8    mark" as one similar to an already-registered mark. Cal. Penal Code § 350. Again, the plaintiff

9    failed to plead that the mark was registered by another person.

10   ### 2.2    Choice-of-Law Provision and California Claims

11   The defendants contend that the choice-of-law provision in the lease agreement precludes any

12   claim under California law. They cite no supporting case law and merely assert that (1) the

13   plaintiff's claims arise out of the agreement, (2) the defendants may enforce the agreement, and (3)

14   the choice-of-law provision thus is enforceable.[33] For the first time in their reply, the defendants

15   argue that they are a third-party beneficiary of the agreement.[34] *Klamath Water Users Protective*

16   *Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999).

17   The court does not consider issues raised for the first time in the reply brief. *Zamani v. Carnes*,

18   491 F3d 990, 997 (9th Cir. 2007) ("district court need not consider arguments raised for the first

19   time in a reply brief"). The scant argument in the original motion does not provide a sufficient basis

20   for this court to rule, and the plaintiff could not respond to the new arguments in the reply brief. The

21   defendants may raise any argument in any later motion to dismiss an amended complaint.

22

23

24

25   [31] Mot. – ECF. No. 21 at 11.

26   [32] Opp'n – ECF No. 23 at 20.

27   [33] Mot. – ECF No. 21 at 13; *see* Ex. 4 to FAC – ECF No. 19-4 at 2 ("This Guaranty shall be governed
     by and construed in accordance with the laws of the Commonwealth of Pennsylvania.").

28   [34] Reply – ECF No. 25 at 10–11.

United States District Court
Northern District of California

### 2.3   False Advertising Claim: Cal. Bus. & Prof. Code § 17508

The defendants moved to dismiss the false-advertising claim because § 17508 does not have a private right of action.[35] The plaintiff concedes the point, contends that he meant to sue under § 17500, not § 17508, and asks for leave to amend.[36] The defendants oppose amendment in part because they have defended against the claim already, and the error was not typographical because the complaint alleges the elements of a § 17508 claim.[37] Given the stage of the proceedings, the court grants leave to amend. *Cook*, 911 F.2d at 247.

### 2.4   Fraud

The plaintiff alleges that at the December 2018 convention, the defendants fraudulently represented that they were authorized distributors of Eltech-manufactured K-Laser lasers, displayed laser devices at the convention that had the K-Laser mark (misleading customers that they were Eltech-manufactured products), sold the plaintiff the K-Laser marked product when in fact Eltech terminated the distribution agreement in February 2018, and the laser was counterfeit.[38] The defendants counter that the plaintiff did not plead fraud with the particularity required by Rule 9(b), and their branding reflected the legal status quo until the issue was resolved by the arbitration panel in June of 2019.[39] The plaintiff submitted the June 2019 arbitration injunction. It required the defendants to stop using the marks "as expeditiously as possible" and by no later than September 3, 2019.[40] Accepting the plaintiff's allegations as true, as the court must, the complaint states a claim for fraud.

Under California law, the elements of fraud are (1) a misrepresentation, (2) knowledge of falsity, (3) an intent to defraud, (4) justifiable reliance, and (5) resulting damages. *Lazar v. Super.*

---

[35] Mot. – ECF No. 21 at 13.

[36] Opp'n – ECF No. 23 at 20.

[37] Reply – ECF No. 25 at 11; *see* FAC – ECF No. 19 at 14 (¶ 41).

[38] FAC – ECF No. 19 at 15 (¶¶ 45–46).

[39] Mot. – ECF No. 21 at 14–15.

[40] Arb. Award, Ex. 1 to Pl. Req. for Jud. Notice – ECF No. 24-1 at 3. The request is unopposed, and the court can judicially notice public records "including the records and reports of administrative bodies." *United States v. Ritchie*, 342 F.3d 903, 907–09 (9th Cir. 2003); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

United States District Court
Northern District of California

*Ct.*, 12 Cal. 4th 631, 638 (1996). The plaintiff also alleges a fraudulent omission, which requires allegations that (1) the defendant concealed or suppressed a material fact, (2) the defendant was under a duty to disclose the fact to the plaintiff, (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would have acted differently if he had known of the fact, and (5) the plaintiff sustained damage as a result of the concealment or suppression. [41] *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007).

The issue is whether the allegations at the pleadings stage plead a fraud claim under Rules 8 and 9(b). At the pleadings stage, one assumes that fact allegations are true. *N. Bay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020) ("Such conduct, if true — as we must assume it to be . . . — is sufficient to survive the strictures under Federal Rule of Civil Procedure 8."). Also, "given that only the *claim* needs to be plausible, and not the facts themselves . . . [no] further factual enhancement [is] necessary." *Id*. Here, in sum, the plaintiff alleges that the products were marked and displayed in a way that suggested they were Eltech products (when they were not), and he was told that Summus was a licensed distributor of Eltech products (when it was not). It may be that the fact record ultimately establishes that there was no misrepresentation, but the plaintiff identified with particularity the alleged omission. Also, Summus's main argument in its reply is that there are no statements by Dr. Albright or Summus Holdings, which is undisputedly correct. [42] But the claim is against Summus Medical Laser. At the pleadings stage, the claim survives.

### 3. Transfer

The last issue is whether transfer is appropriate to the Middle District of Tennessee under 28 U.S.C. § 1404(a) or the Commonwealth of Pennsylvania under the lease agreement. [43] The defendants have not met their burden to establish that transfer is appropriate.

---

[41] Opp'n – ECF No. 23 at 22 (referencing Elachi, presumably, Eltech).

[42] Reply – ECF No. 25 at 12–13.

[43] *Id*. at 12.

### 3.1   28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Although Congress drafted § 1404(a) in accordance with the doctrine of forum non conveniens, it was intended to be a revision to, rather than a codification of, the common law. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981); *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Thus, a § 1404(a) transfer is available "upon a lesser showing of inconvenience" than that required for a forum non conveniens dismissal. *Norwood*, 349 U.S. at 32.

The burden is upon the moving party to show that transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Nonetheless, the district court has broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *see Westinghouse Elec. Corp. v. Weigel*, 426 F.2d 1356, 1358 (9th Cir. 1970).

An action may be transferred to another court if (1) that court is one where the action might have been brought, (2) the transfer serves the convenience of the parties, and (3) the transfer will promote the interests of justice. *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) (citing 28 U.S.C. § 1404(a)). The Ninth Circuit has identified additional factors that a court may consider in determining whether a change of venue should be granted under § 1404(a):

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99. Courts may consider "the administrative difficulties flowing from court congestion . . . [and] the 'local interest in having localized controversies decided at home.'" *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).

1      Generally, the court affords the plaintiff's choice of forum great weight. *Lou v. Belzberg*, 834

2 F.2d 730, 739 (9th Cir. 1987). But when judging the weight to be given to the plaintiff's choice of

3 forum, consideration must be given to the respective parties' contact with the chosen forum. *Id*. "If

4 the operative facts have not occurred within the forum and the forum has no interest in the parties

5 or subject matter," the plaintiff's choice "is entitled only minimal consideration." *Id*.

6      The transaction giving rise to the lawsuit occurred here, and the court accords the plaintiff's

7 choice of forum great weight. The defendants have substantial contacts with the Middle District of

8 Tennessee. The other factors are more or less neutral. The defendants have not met their burden to

9 show that transfer is appropriate, and the court denies the motion to transfer.

10    **3.2**    **Forum-Selection Clause**

11      As discussed above, the briefing did not allow the court to reach the issue of the applicability

12 of the lease agreement to the parties in this action. The defendants can raise the issue in a motion

13 to dismiss the amended complaint.

14 **CONCLUSION**

15      The court dismisses the claims against Dr. Albright and Summus Holdings for lack of

16 personal jurisdiction under Rule 12(b)(2), dismisses the RICO and § 17508 claims with leave to

17 amend, and denies the motion to dismiss the common-law fraud claim and the motion to transfer

18 the case. Any amended complaint must be filed within three weeks (absent stipulation of the

19 parties or a further court order) and must attach as an exhibit a blackline comparison of the

20 amended complaint against the current complaint. This disposes of ECF No. 21.

21    **IT IS SO ORDERED.**

22     Dated: October 28, 2021

23                                LAUREL BEELER
                                   United States Magistrate Judge

*United States District Court*
*Northern District of California*